OPINION
Appellant, Rodney F. Shaner, appeals a judgment of the Court of Common Pleas of Logan County, denying his post-sentence plea withdrawal motion pursuant to Crim.R. 32.1. For the reasons that follow, we affirm the judgment of the trial court.
On May 7, 1990, in case number CR 90-01-0016, Appellant pled guilty to one count of burglary in violation of R.C. 2911.12, a second-degree felony. Additionally, in case number CR 90-05-0048, Appellant pled guilty to one count of gross sexual imposition in violation of R.C. 2907.05(A)(3), a third-degree felony. The guilty pleas were entered pursuant to a plea agreement with the State. On May 30, 1990, the trial court sentenced Appellant to two years in prison for the gross sexual imposition offense, and five years to fifteen years in prison for the burglary offense, to be served consecutively.
Thereafter, on February 1, 1999, Appellant filed a motion in each case to withdraw his guilty plea pursuant to Crim.R. 32.1. The matter came on for hearing in the trial court on October 13, 1999. In a judgment entry dated October 22, 1999, the trial court denied Appellant's motion.
Appellant timely appeals the judgment of the trial court denying his post-sentence plea withdrawal motion, assigning two errors for our review. Due to their similarity, we will address Appellant's assignments of error together.
Assignment of Error No. 1
 The Appellant was [denied] substantial (sic) due process and equal protection of law when the trial court abused its discretion in denying the Appellant's motion to withdraw his plea when Ohio Adult Parole Authorities (sic) new guidelines are violative of the Ex Post Facto Clause of the United States Constitutional Amendments Fifth, Sixth, Fourteenth and Article I, § IX, Article I, § X including the Ohio State Constitution Article I, Sections X, XVI, XX and Article I, § XVIII.
Assignment of Error No. 2
 The Appellant was denied substantial (sic) due process and equal protection of the laws when the trial court abused its judicial discretion in denying Appellant's motion to withdraw his plea when the Ohio Adult Parole Authority's new guidelines used to determine parole eligibility are violative of the Separation (sic) of Powers Doctrine, Ohio Constitution Article IV, § I, Article I, § II, denying Appellant equal protection of the laws guaranteed by the United [States] Constitution Fourteenth Amendment.
Crim.R. 32.1 governs post-sentence plea withdrawal motions, stating:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
Regarding the manifest injustice standard, the Supreme Court of Ohio stated:
 A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice.
 A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court.
 State v. Smith (1977), 49 Ohio St.2d 261, at paragraphs 1, 2 of the syllabus. This standard "seeks to avoid the possibility of a defendant pleading guilty to test the weight of a potential punishment", and "is allowable only in extraordinary cases."Id., at 264.
The appellate standard of review regarding a trial court'sdenial of a post-sentence plea withdrawal motion is abuse ofdiscretion. State v. Nathan (1995), 99 Ohio App.3d 722, 725;State v. Shaffer (Nov. 5, 1999), Marion App. No. 9-99-41,unreported. An abuse of discretion by the trial court "connotesmore than an error of law or judgment; it implies that the court'sattitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157.
The crux of Appellant's appeal is based upon changes that have occurred with the Adult Parole Authority (APA) since his conviction. Appellant first argues that the APA's internal guidelines regulating parole eligibility, as modified March 1, 1998, are unconstitutional. Additionally, Appellant argues that the APA, acting as an arm of the State, breached the terms of his contractual plea agreement, thus, making it impossible for him to be released at the time he expected to be released when he entered his guilty pleas.
Initially, we note that a post-sentence plea withdrawal motionis not the correct procedure for addressing the constitutionalissues Appellant raises. The Supreme Court of Ohio has held that"a declaratory judgment is the proper remedy to determine theconstitutionality or constitutional application of paroleguidelines." Hattie v. Anderson (1994), 68 Ohio St.3d 232, 235,citing Adkins v. Capots (1989), 46 Ohio St.3d 187, 188. Despite Appellant's procedural error, we are nevertheless unconvinced that the trial court erred in denying Appellant's motion.
Pursuant to R.C. 2967.03, the APA is empowered with discretion to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." Seealso Hattie, supra at 123-24. This statute creates no constitutional right to be released from prison prior to the expiration of a valid sentence. Id. at 125, citing Greenholtz v.Inmates of Nebraska Penal Correction Complex (1979), 442 U.S. 1,7.
In exercising this parole discretion, the APA conducts a reviewscreening of offenders pursuant to its internal guidelines andfills out a "risk assessment/aggregate score" sheet. Hattie,supra, at 123. During the review screening process the APAconsiders certain relevant factors, assigning each factor anumerical score; "the higher the score, the greater the risk ofparoling the inmate." Id. These numerical scores are thentotaled and converted to a "risk score" Id. In turn, the "riskscore" is added to an "offense score", based on the type ofoffense, and an "institution score", based on the inmate'sbehavior in prison, to yield an "aggregate score". Id. Afterdetermining the "aggregate score", the APA consults a chartrecommending an outcome based on the score. Id.
The record reflects that after calculating Appellant's "aggregate score", the APA determined that Appellant is eligible for parole after serving one hundred fifty months in prison, which is later than the minimum sentenced imposed by the trial court. In doing so, the APA considered several factors relating to offenses that the State agreed not to charge Appellant with pursuant to the plea agreement. According to Appellant, the net effect is that the APA is punishing him for offenses that he was not convicted of, in violation of the plea agreement.
In addressing Appellant's argument, we first note that the APA is not limited by the plea agreement in determining an offender's eligibility for parole. Ohio Administrative Code 5120:1-1-07, which governs the factors that shall and may be considered by the APA, states in part:
 (B) In considering the factors specified in paragraph (C) of this rule, the parole board shall consider the following:
* * *
 (2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;
(3) Any presentence or postsentence report;
* * *
 (6) Such other relevant written information concerning the inmate as may be reasonably available, except that no document related to the filing of a grievance under rule 5120-9-31
of the Administrative Code shall be considered.
* * *
 (C) In making any determination under paragraph (A) of this rule, the parole board may take into consideration any of the following factors:
* * *
(7) Any recommendations made by the sentencing courts;
* * *
 (16) Any other factors which the board determines to be relevant, except for documents related to the filing of a grievance under rule 5120-9-31 of the Administrative Code.
Moreover, the issue before this court was recently addressed by the Ninth District Court of Appeals in State v. McMinn (June 16, 1999), Medina App. No. 2927-M, unreported. In denying the appellant's post-sentence plea withdrawal motion, the court inMcMinn stated:
 The trial court explicitly informed McMinn, at the time of sentencing, that once the sentence was imposed the trial court did not have jurisdiction over his incarceration. After being told this, McMinn agreed to continue with sentencing. There is nothing in the record to indicate that he had an agreement with the state, or even obtained any informal promises by the state, that he would serve the minimum sentence so long as he maintained a satisfactory prison record. At the sentencing hearing McMinn specifically acknowledged that no other promises were made. * * *
 Because performance of the agreement was complete by December 31, 1981, or shortly thereafter, no action by the state after the 1992 disposition of his Crim.R. 32.1 motion could have breached that agreement. Taking as true McMinn's assertion that recent changes in the parole system may increase the length of his incarceration, under the contract theory he has asserted he has not met his burden of establishing a manifest injustice that would require that he be permitted to withdraw his plea. Because of this, the trial court was not required to hold an evidentiary hearing, and its summary disposition of his motion was not an abuse of discretion.
 See also State v. Rodriguez (May 26, 2000), Defiance App. No. 4-2000-02, unreported.
As in McMinn and Rodriguez, the record herein indicates that Appellant voluntarily pled guilty to both charges and was advised by the trial court of his rights pursuant to Crim.R. 11(C). There is nothing in the record or the plea agreement to indicate Appellant received any formal or informal promise from the State that he would serve the minimum prison sentence imposed. The only promise Appellant received was that the State agreed not to pursue additional charges in exchange for Appellant's guilty pleas.
Although Appellant equates the actions of the APA in evaluating parole eligibility with criminal charges in violation of his parole agreement, this is not the case. The fact remains clear that the State satisfied its agreement on June 4, 1990 when the conviction and sentence were journalized. What the APA did pursuant to its internal guidelines after that date does not affect the original plea agreement.
Therefore, because there is no evidence of an agreement reachedbetween Appellant and the State concerning a minimum sentence tobe served, and because the APA is not limited to consideringAppellant's plea agreement, we hold that the trial court did notabuse its discretion in determining that the basis for Appellant'spost-sentence plea withdrawal motion does not demonstrate amanifest injustice.
Accordingly Appellant's assignments of error are not well taken and are therefore overruled.
Having found no error prejudicial to the Appellant herein, inthe particulars assigned and argued, we affirm the judgment of thetrial court.
 ____________________________ WALTERS, J.
SHAW and BRYANT, JJ., concur.